COLONIAL & U. S. MORTG. CO., Limited, *v.* HUTCHINSON MORTG. CO. *et al.*

*(Circuit Court, S. D. Iowa, C. D.   November 21, 1890.)*

1. ACCOUNTING IN EQUITY.
   From time to time complainant forwarded lump sums of money to defendant, and to these were added the amounts paid in on the principal and interest of loans already made, and the fund thus created was intrusted to defendant to be loaned on improved farms. Defendant was forbidden to make loans in certain localities and on certain kinds of lands. These instructions having been violated, complainant tendered to defendant the notes and mortgages which represented the loans improperly made, and demanded a settlement of the account. *Held,* that complainant was entitled to an accounting in equity.

2. SAME—PARTIES.
   Where a bill in equity against a corporation waives an answer under oath and seeks no special discovery from the individual defendants, the officers and stockholders of the corporation, against whom no relief is asked, are not proper parties defendants, and a demurrer by them will be sustained.

In Equity.   Demurrers to bill in equity.
*Whiting S. Clark* and *Chas. A. Clark,* for complainant.
*Read & Read* and *Lehmann & Park,* for defendants.

SHIRAS, J.   The complainant is a foreign corporation, engaged in loaning money on farm property, and in the carrying on of this business it constituted the defendant, an Iowa corporation, its agent, and intrusted to it the entire management of its affairs in the state of Kansas. According to the averments of the bill, it was the custom of complainant

to forward from time to time to the defendant corporation lump sums of money, and to these were added the amounts paid in from time to time upon the principal and interest of loans already made, and the fund thus created was intrusted to the defendant corporation, to be loaned out upon the security of improved farms. In the instructions given to the defendant it was forbidden to make loans in certain named localities, and also upon certain kinds of lands. Under the agreement between the parties, the defendant corporation guarantied the titles of the lands upon which it made loans, and was bound to make weekly and monthly reports of the business conducted by it, and was further bound to collect the interest and principal of the loans as they matured, to see that the borrowers kept the taxes on the mortgaged property paid up, and generally to exercise proper supervision over the business intrusted to it. As compensation for its services the defendant was entitled to a fee of 5 per cent. upon the amount of each loan; one-half to be paid when the loan was made, and the remainder in annual payments during the life of the loan. It is charged in the bill that the defendant corporation in many instances violated the express instructions given it, and made many loans of the money intrusted to it upon lands situated in localities in which it was forbidden to make loans, and also upon lands of a character and quality which it was forbidden to take as security. It is also charged that the defendant failed to make proper reports of its doings; that finally the complainant terminated the agency, and, upon ascertaining the fact that the defendant corporation had violated the instructions given it in regard to the loans to be made, complainant caused an investigation to be made, and, upon learning the full facts, it tendered back to defendant the notes and mortgages which represented the loans improperly made, and demanded a full accounting of the moneys received by defendant, and a settlement and adjustment of the account between the parties. In the bill this tender is repeated, and complainant offers to place in the hands of the court, or of a receiver to be appointed, such notes and mortgages, to be disposed of as the equities of the parties may require. The bill is very lengthy, and I shall not attempt to state it more fully, as the foregoing is sufficient to show the nature of the questions presented by the demurrers interposed by the defendants. To this bill the defendant corporation and Charles and Paul Hutchinson, two of its managing officers and principal stockholders, are made parties defendant.

The first question raised by the demurrers to the bill is that the case is not one of which a court of equity can take jurisdiction, the remedy at law being adequate. Counsel for defendants have supported the demurrers in a very clear and able argument, yet, in spite of the cogent reasoning employed, it must be held that the bill presents a case within equitable cognizance. The averment of facts in the bill shows that the defendant corporation undertook a duty in the nature of a trust. As agent for the complainant, it received large sums of money, and agreed to dispose of the same under certain restrictions and limitations, thereby undertaking to apply the same faithfully, and in accordance with the

confidence reposed in it, which is of the very essence of a trust. The theory of the bill is that the defendant corporation expressly violated the instructions given it, and misapplied the funds intrusted to it by loaning the same upon property which, by reason of its location or quality, came within the restrictions imposed upon the defendant, as agent for the complainant, and for this breach of trust it is now sought to compel the defendant to account. As the defendant corporation refused to take back the mortgages which it is claimed evidence the loans made in breach of the trust confided to it, the complainant seeks the aid of a court of equity to direct the disposition to be made of these mortgages, pending the settlement of the account between the parties. It may be entirely true, as contended for by defendant's counsel, that the complainant might accept these mortgages for their value, and sue the defendant for the damages caused by loans made on insufficient security; but it does not follow that the complainant was compelled to adopt that course. As is said in *Taylor* v. *Benham*, 5 How. 233:

"Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of the trust."

Many of the loans averred to have been improperly made are not yet due. What amounts can be realized from the mortgages cannot be known at the present time. Had complainant chosen to accept the mortgages *pro tanto*, and sued for damages, assuming that such a course was open to complainant, it is clear that it would have been almost impossible to have ascertained, by the verdict of a jury, the amount necessary to be paid to complainant, because the *data* for anything approaching an exact estimate does not now exist. Had complainant, tendering back the mortgages in question, sued at law for so much money had and received, it would, in order to ascertain the sum due, be necessary to have a full and complete accounting between the parties; because the sums loaned on the mortgages in question were not specific amounts, forwarded in each case by complainant, but were amounts taken from the general fund placed with defendant, and made up of sums forwarded by complainant and collections made by the defendant of other loans. In any event, to effectuate justice between the parties, a full accounting would have been necessary of the entire business dealings between the parties,—a task to which the powers of a court of law would be wholly inadequate. However this may be, it is clear that the complainant has the right to call the defendant corporation to an account for the manner in which it has performed, or failed to perform, the trust confided to it; and, as it is apparent that such accounting involves many and complex questions, including the disposition to be made of the mortgages tendered back to the defendant, the expenses connected therewith, the sums received as interest thereon, and the compensation, if any, due to the defendant, it follows that, not only by reason of the right of complainant to call for a settlement of the trust, but also by reason of the complexity of the account to be settled, and the disposition to be made of the mort-

gages in question, there exists grounds for the exercise of equitable jurisdiction. Much of the argument in support of the demurrer was addressed to the proposition that, where the rights of the parties arise upon contract, and an accounting is sought in order to ascertain the amount to be adjudged to the complainant, a court of equity cannot take jurisdiction simply because the account is voluminous, and embraces many separate items. As a general proposition, this is undoubtedly true, yet there are many exceptions to be made in the application of it to particular cases. Much stress was laid in support of the proposition upon the ruling of the supreme court in *Root* v. *Railway Co.*, 105 U. S. 189, in which was filed a bill for an accounting for profits and savings alleged to have accrued to an infringer of a patent, the bill having been filed after the termination of the life of the patent. The authorities are fully collated and commented on, and the conclusion is reached—

"That a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; that the most general ground for equitable interposition is to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement, but that grounds for equitable relief may arise other than by way of injunction, as where the title of the complainant is equitable merely, or equitable interposition is needed on account of the impediments which prevent a resort to remedies purely legal; and such an equity may arise out, and inhere in, the nature of the account itself, springing from special and peculiar circumstances which disable the patentee from a remedy at law altogether, or render his remedy in a legal tribunal difficult, inadequate, and incomplete, and, as such cases cannot be defined more exactly, each must rest upon its own particular circumstances, as furnishing a clear and satisfactory ground of exception from the general rule."

This case, therefore, holds that, even in the absence of any other equity, the nature of the accounting may be such that a court of law cannot deal adequately therewith, and in such case jurisdiction in equity can be sustained.

The case at bar falls fairly within the ruling in *Parkersburg* v. *Brown*, 106 U. S. 487, 1 Sup. Ct. Rep. 442, wherein it is said:

"The right which the plaintiffs so have to call on the city to render an account of the property is one which can be properly adjudicated in this suit in equity. It involves the taking of an account, the sale, under the direction of the court, of what remains of the property, and the ascertainment of the proper charges to be allowed to the city against the moneys it has received and against the proceeds of sale."

Even more applicable is the language used in *Kirby* v. *Railroad Co.*, 120 U. S. 130, 7 Sup. Ct. Rep. 430, wherein it is said:

"The case made by the plaintiff is clearly one of which a court of equity may take cognizance. The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity. It would have been difficult, if not impossible, for a jury to unravel the numerous transactions involved in the settlements between the parties, and reach a satisfactory conclusion as to the amount of drawbacks to which Alexander & Co.

were entitled on each settlement. Justice could not be done except by employing the methods of investigation peculiar to courts of equity."

But, as already said, it is not necessary to base the jurisdiction in equity upon the nature of the account alone. The averments of the bill show that there existed between the parties a trust of a fiduciary nature, and the bill charges numerous breaches of such trust on part of defendant, and seeks a settlement thereof, and thus we have presented a case of undoubted equitable jurisdiction as against the defendant corporation.

On behalf of the defendants Charles and Paul Hutchinson, the demurrers present the question whether they are proper parties to the bill. No relief is prayed against these defendants, and from the averments of the bill it is plain that they are joined as defendants solely for the purpose of securing a full answer from the corporation; yet the bill expressly waives an answer under oath, and does not seek any special discovery from the individual defendants. The general rule is well settled that no one should be made a party defendant who has no interest in the suit, and against whom no decree nor relief is sought, or who in fact is merely a witness in the case. Under the former practice, an exception to this general rule existed in suits against corporations, in which, in order to secure an answer under oath and when needed to compel full discovery, it was permissible to join as a defendant an officer or stockholder therein. As all parties, regardless of interest, are now permitted and compellable to testify, the necessity for making an officer of the corporation a party for the purposes of discovery no longer exists. In the present instance, the bill, as already said, does not require the answers of defendants to be under oath, but expressly waives the same, and it is difficult to see what good purpose is subserved by making the officers parties defendant. If they should refuse to answer, no decree could be rendered against them for any relief, for none is prayed, and, if it was sought to make them answer fully on behalf of the corporation, no ground exists for such a course, for neither discovery nor answer under oath is prayed for. All the effect that could be given to an answer filed by them would be that of a pleading on behalf of the corporation, and, so far as answering the bill is concerned, the defendant corporation is competent to answer for itself. If the corporation fails to answer, a decree *pro confesso* can be taken against it, and in proving up its claims thereunder the complainant can procure the testimony of the officers of the corporation and all other evidence needed. If the defendant corporation answers, then the issues presented by that answer are the ones to be heard and determined, and the filing of answers by the other defendants would only incumber the record to no good purpose. It not appearing, therefore, that any reason exists for making Charles and Paul Hutchinson parties defendant, it must be held that they are improperly joined as defendants, and upon that ground the demurrers to the bill are sustained. Leave is granted to amend by dismissing the bill as to them, and the defendant corporation is ruled to answer the bill by the January rule-day.