CITIZENS FOR A BETTER ENVIRONMENT et al., Plaintiffs,

v.

VILLAGE OF ELM GROVE et al., Defendants.

No. 78–C–670.

United States District Court, E. D. Wisconsin.

Dec. 19, 1978.

Bill Forcade, Thomas J. Crawford, Milwaukee, Wis., for plaintiffs.

Davis, Kuelthau, Vergeront, Stover & Leichtfuss by Thomas G. Boyer, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This matter is before me on the plaintiffs' motion for a preliminary injunction to enjoin the defendants from enforcing chapter 20, Elm Grove village ordinances, against the plaintiffs.

One of the plaintiffs, Citizens for a Better Environment (CBE), is a non-profit Illinois corporation which allegedly engages in dissemination of information, educational programs, research concerning environmental issues and litigation of pollution complaints. A major part of its activities in Wisconsin is carried on by a door-to-door canvass in the Milwaukee area, during which CBE staff members inform the public of CBE's activities, discuss environmental problems, and solicit financial contributions. Another plaintiff, Martin H. Wojcik, is the director of development for CBE in the state of Wisconsin, and he conducts CBE canvassing activities in the state. The defendants in this action are the village of Elm Grove, six members of the Elm Grove village board, and the police chief of Elm Grove.

The ordinance in question in this case is the Elm Grove "Transient Merchants and Solicitors Ordinance," chapter 20, Elm Grove village ordinances. The ordinance, as amended April 10, 1978, includes the following provisions. Section 20.03 provides that

"It shall be unlawful for any person to act as a transient merchant or solicitor without first having obtained a license from the Village Board for that purpose, and having paid the license fee as hereinafter provided."

Section 20.02 provides that the licensing requirement does not apply to certain categories of people including

"(a) Persons selling personal property at wholesale to dealers in such articles.

"(b) Newsboys soliciting subscriptions for or delivering daily or weekly newspapers of general circulation.

"(c) Persons participating in duly authorized church, charitable, school, or civic activities, where the sponsoring organization has been approved by resolution of the Village Board."

Section 20.04 sets forth a licensing procedure, requiring applicants to provide information about themselves and the organization they represent. Section 20.05 requires that the police department and the village clerk investigate all applicants. Applicants are charged $5.00 to defray the cost of said investigation. Section 20.07 provides that successful applicants pay a license fee of $10.00 per solicitor, per annum.

In March, 1977, CBE by its agent, Mr. Wojcik, requested the Elm Grove village board to give CBE an exemption from the solicitation ordinance in order to conduct a canvass operation. Mr. Wojcik attended a meeting of the village board, held May 9, 1977, at which time a board member told Mr. Wojcik that more information about the CBE was needed before the board could make a decision. Further information was sent to the board, in writing, and on June 13, 1977, Mr. Wojcik again appeared before the village board requesting an exemption from the solicitation ordinance. The board again declined to resolve the request. On July 11, 1977, at yet another meeting of the village board, a motion to exempt the CBE from the fee, bonding and fingerprint requirements of the solicitation ordinance was disapproved.

On December 19, 1977, Mr. Wojcik wrote a letter to the village clerk requesting that the board reconsider its prior decision. Although at its meeting of January 30, 1978, the board discussed CBE's request, it did not change its prior decision. On April 10,

1978, several sections of the solicitation ordinance were amended, although the basic regulatory pattern of the ordinance remained intact. Since CBE has not received an exemption from the solicitation ordinance, the chief of police of Elm Grove has stated to Mr. Wojcik and to the court in his affidavit that members of the CBE canvass staff would be arrested if they conduct a canvass in Elm Grove without a license.

The question before me now is whether a preliminary injunction should be granted, enjoining the defendants from enforcing chapter 20 against the plaintiffs. In resolving this question, I must be guided by *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976), in which the court stated that plaintiffs seeking preliminary injunction have the burden of showing that

"... the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest."

I am persuaded that the plaintiffs have met each of these prerequisites.

The first question which must be resolved in determining whether the plaintiffs are entitled to a preliminary injunction is whether they will suffer irreparable harm if such injunction is not granted. From the record before me, it is apparent that the canvass proposed by CBE is political activity which is protected under the First Amendment. "[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). It is also clear that the plaintiffs, who have been threatened with arrest if they engage in their proposed canvass, have been inhibited in exercising their First Amendment rights by the solicitation ordinance as applied to them.

Despite these facts, the defendants advance three arguments in support of their contention that the plaintiffs will not suffer the requisite irreparable harm. First, the defendants assert that the plaintiffs will not suffer irreparable harm because they have not applied for either an exemption or a license under the solicitation ordinance since it was amended on April 10, 1978. I find no merit in this contention. Mr. Wojcik and members of the CBE canvass staff have been threatened with arrest under the amended ordinance. Moreover, "[i]n the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965).

Second, the defendants claim that constitutional protection of the First Amendment applies only to "pure speech" and not to solicitation of money, even if such solicitation takes place in the context of political speech. Thus, the defendants assert that even if the injunction is denied, the plaintiffs will be able to engage in pure speech without restriction. I find no basis in logic or law to support the distinction which the defendants urge. Political groups often must solicit contributions in order to operate. To hold that such groups lose the protection of the First Amendment when, in the context of a political appeal, they solicit money, would subject such groups to just the type of scrutiny that the First Amendment was designed to prohibit.

Moreover, I find no support in case law for the distinction advanced by the defendants. In *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691–92 (7th Cir. 1975), the court, citing *Schneider v. Irvington*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), stated "[m]oreover, there is authority for the proposition that canvassing for funds door-to-door in conjunc-

tion with dissemination of information is also protected by the First Amendment." *See also Citizens for a Better Environment v. Village of Schaumburg*, 590 F.2d 220 (7th Cir. 1978).

The case relied·on by the defendants, *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), is inapposite. In *Breard*, the Court stressed the commercial nature of the activity in upholding an ordinance which barred, among other things, the door-to-door solicitation of magazine subscriptions. In the case at bar, the plaintiff CBE is a non-profit environmental group, and hence *Breard* is not applicable. *Citizens for a Better Environment v. City of Park Ridge*, supra at 692.

The defendants' final argument is that in view of the time which elapsed between the dates on which CBE first applied for an exemption and the date on which this suit was instituted, the plaintiffs will not be irreparably harmed by the application of the solicitation ordinance during the additional period before their claim comes to trial on the merits. I do not believe that the plaintiffs should be penalized for having attempted to work·through the political process. Furthermore, the court of appeals for this circuit has stated "that even the temporary deprivation of First Amendment rights constitutes irreparable harm in the context of a suit for an injunction." *Citizens for a Better Environment v. City of Park Ridge*, supra at 691. Thus, I find that the plaintiffs have shown that they will be irreparably harmed if the preliminary injunction they seek is not granted.

I am also persuaded that the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendants. The defendants assert that a "lawless atmosphere" would be the result of a preliminary injunction being issued. However, they do not support such an accusation with any evidence. The CBE has conducted other canvasses in the Milwaukee area without incident. Moreover, the motion for a preliminary injunction brought by the plaintiffs requests that the defendants be enjoined from enforcing the law against CBE canvassers on two consecutive weekdays from 9:00 A.M. to 9:00 P.M. Thus, the intrusion which would result from the injunctive relief requested would be limited and, in my judgment, does not outweigh the harm that would otherwise befall the plaintiffs. *Citizens for a Better Environment v. Town of Cicero*, No. 73–C–1908 (N.D.Ill.1973).

Next, I must consider whether the plaintiffs have a reasonable likelihood of prevailing on the merits of the claims on which their motion for a preliminary injunction is based. For reasons stated earlier, I find that the canvass proposed by the plaintiffs is an activity protected by the First Amendment. The defendants rightly point out that this protection is not absolute. In *Cantwell v. Connecticut*, 310 U.S. 296, 306–07, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940), the Court stated:

"Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his ·identity and his authority to act for the cause which he purports to represent. The State is likewise free to·regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience."

However, the Court also recognized in *Cantwell* that permissible limitations on protected activities must be narrowly circumscribed in order to comport with constitutional requirements.

"But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution." Id. at 307, 60 S.Ct. at 904.

Thus, the regulation of speech permitted by *Cantwell* may not be carried out by statutorily granting city officials overly broad discretion which could lead to arbitrary or discriminatory licensing decisions. *Smith v.*

*Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Citizens for a Better Environment v. Village of Schaumburg,* 590 F.2d 220 (7th Cir. 1978). Also, the licensing body may not be given improper censorship powers in the area of Fifth Amendment rights. *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 98–99, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

I am persuaded that the Elm Grove solicitation ordinance has been applied to the plaintiffs in this case in an unconstitutional manner. The record indicates that in determining whether to grant CBE an exemption from the licensing requirement, members of the village board inquired into the positions taken by CBE and the basis for such positions. Moreover, I am not persuaded that the amendment of the ordinance in April 1978, cures this defect. Section 20.02(c)(1) of the amended ordinance lists criteria which ostensibly limit the discretion of the village board in resolving requests of organizations purporting to be "charitable" or "civic" groups for exemptions from the solicitors ordinance. The section specifically mandates that the board consider

> ". . . the nature and extent of the civic or charitable purposes of the organization; the methods and procedures followed by its management in determining its position on attitudes and courses of action in the field of its charitable or civil activities; its reputation and experience in the particular field of its civil or charitable activity; the character and personal background of the active managing officers of such organization, as well as their capability and competency in the field of its activity; and the relevance of the goals of such organization to the residents of Elm Grove."

I believe that § 20.02(c)(1) gives the board free reign to inquire into the content of an alleged civic group's activities or positions and on that basis decide whether to grant the group an exemption.

Similarly, § 20.06(a) allows the village board to refuse a license to an applicant if in the board's judgment "such applicant would constitute a threat to the safety and security of village residents or his product or service would produce unsatisfactory results to such residents." A village board may not constitutionally regulate the marketplace of ideas by determining what political positions would be "unsatisfactory" to village residents.

Therefore, I believe that the plaintiffs have met their burden of demonstrating a reasonable probability of success on the merits. I also find that the granting of a preliminary injunction in this case comports with the public interest. Furthermore, I reject the defendants' contentions that a preliminary injunction may not be granted in this action because said injunction would alter the status quo or because the plaintiffs have "dirty hands". Therefore, the plaintiffs' motion for a preliminary injunction will be granted.

Therefore, IT IS ORDERED that the plaintiffs' motion for a preliminary injunction be and hereby is granted.

IT IS ALSO ORDERED that the defendants be and hereby are enjoined from enforcing chapter 20, Elm Grove village ordinances, against the plaintiffs or their canvass representatives from 9:00 A.M. to 9:00 P.M. on any two consecutive weekdays designated by the plaintiffs prior to May 31, 1979. The plaintiffs shall designate on which two weekdays they will conduct their canvass by informing the defendants in writing, at least five days before the first day of the canvass.

IT IS FURTHER ORDERED that pursuant to Rule 65(c), Federal Rules of Civil Procedure, the plaintiffs post $500 security with the clerk of this court.