**CITIZENS FOR A BETTER ENVIRON-MENT et al., Plaintiffs,**

v.

**VILLAGE OF OLYMPIA FIELDS et al., Defendants.**

**No. 80 C 0756.**

United States District Court, N. D. Illinois, E. D.

Dec. 18, 1980.

Bill Forcade, Robert Goldsmith, Chicago, Ill., for plaintiffs.

Michael Nash, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

*Motion for Summary Judgment*

MAROVITZ, Senior District Judge.

Plaintiffs Citizens For A Better Environment (CBE) and Illinois Public Action Council (PA) commenced this action under 42 U.S.C. § 1983 against 24 Chicago-area municipalities, alleging that each municipality's ordinance regulating door-to-door solicitation abridges plaintiffs' First Amendment rights. Specifically, plaintiffs allege that the ordinances, which all require prior municipal approval of door-to-door solicitation, are constitutionally deficient in two respects: (1) because they do not establish a specific time period in which applications to solicit must be acted upon; and (2) because they restrict any weekday door-to-door solicitation to certain daytime hours. Plaintiffs seek declaratory and injunctive relief. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343(3).

The defendants named in plaintiffs' complaint are Village of Olympia Fields, Village of Bensenville, Village of Blooming-

dale, City of Blue Island, Calumet City, Cicero, Country Club Hills, Village of Deerfield, Village of Evergreen Park, Village of Glencoe, Village of Hanover Park, Hickory Hills, Highland Park, Village of Matteson, Village of New Lennox, North Chicago, Oak Forest, Village of Oak Lawn, Village of Palatine, Village of Riverside, Village of Romeoville, Village of Schiller Park, Village of Steger Park, and Wheaton. Since the filing of this action, Village of Olympia Fields, City of Blue Island, Calumet City, Cicero, Village of Glencoe, Hickory Hills, Village of New Lennox, Village of Romeoville, Village of Schiller Park, and Village of Steger have voluntarily amended their ordinances to cure the alleged constitutional defects therein. Plaintiffs have voluntarily dismissed those municipalities.

The ordinances of the remaining defendants restrict door-to-door soliciting to certain weekday daytime hours in one of two ways. Some of the defendants restrict soliciting year-round to the hours of 9:00 a. m. to some hour between 4:00 p. m. to 6:00 p. m., inclusive, while the other defendants permit soliciting from 9:00 a. m. until "sunset." [1]

CBE and PA are both Illinois non-profit organizations. CBE is organized for the purpose of promoting environmental protection. Its two primary functions are research and canvassing. CBE's canvassing activities include door-to-door interviewing and solicitation of funds. It alleges that the overwhelming majority of its income is received from door-to-door solicitations. PA is primarily concerned with energy, utility, and tax reform issues. It also alleges

that the majority of its income comes from contributions made as a result of door-to-door solicitations. Plaintiffs wish to conduct their door-to-door solicitation campaigns in defendants' jurisdictions up until 9:00 p. m. on weekdays throughout the year. They offer affidavits and survey and statistical evidence in support of the proposition that more persons are home from 6:00 p. m. to 9:00 p. m. on weekdays than any significant block of time between 9:00 a. m. and 6:00 p. m. Therefore, plaintiffs argue, their campaigns can be more effectively conducted during those evening hours. Plaintiffs allege that defendants have or are threatening to enforce their ordinances against plaintiffs' members.

Pending before the Court is plaintiffs' motion for summary judgment.[2] Fed.R. Civ.P. 56. Because the Court finds that the contested issues material to plaintiffs' claims are only of a legal nature, plaintiffs' claims are ripe for summary judgment. Fed.R.Civ.P. 56(c). For the reasons set forth below, the Court grants plaintiffs' motion.[3]

Defendants can not dispute that plaintiffs' door-to-door activities implicate the First Amendment freedoms of both plaintiffs and defendants' residents. *E. g., Village of Schaumburg v. Citizens For A Better Environment*, 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1976); *Martin v. Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943).[4]

---

1. Typical of the ordinances which permit solicitation until "sunset" is Village of Bloomingdale's recently enacted ordinance which permits solicitation until 8:30 during those months when daylight savings time is in effect and until 6:00 p. m. during all other months.

2. Also pending is Wheaton's motion to dismiss for failure to state a claim upon which relief can be granted, filed March 21, 1980. Fed.R. Civ.P. 12(b)(6). In view of the Court's holding today, that motion is denied.

3. Pursuant to the Court's suggestion, defendants have filed one brief in response to plaintiffs' motion. To the extent a particular de-

fendant wished to add an argument on its behalf to those made in the joint brief the Court made the further suggestion that it file a letter setting forth that argument. Both Village of Palatine and Village of Bloomingdale have done so.

4. The relation of such activities to constitutional free speech has never been more eloquently stated than in *Martin* where Justice Black, writing for the Court, stated:

While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination

Consequently, and contrary to generally applicable principles of statutory construction, the ordinances complained of are presumptively unconstitutional. *Organization For A Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *Citizens For A Better Environment v. Village of Schaumburg*, 590 F.2d 220, 224 (7th Cir. 1978), aff'd, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73. Defendants' ordinances may withstand plaintiffs' constitutional challenge only if defendants establish that the ordinances relate with narrow specificity to one or several legitimate government interests and do not unduly intrude upon the rights of free speech. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 616, 620, 96 S.Ct. 1755, 1758, 1760, 48 L.Ed.2d 243 (1976).

The Court turns first to plaintiffs' challenge to the time restrictions on door-to-door solicitation found in defendants' ordinances. Defendants assert the two interests which these restrictions are designed to serve are those of crime prevention and public annoyance. These interests are certainly of legitimate government concern, *id.* at 616–17, 96 S.Ct. at 1758–59, and may be furthered by reasonable regulation of door-to-door solicitation. *Citizens For A Better Environment v. City of Park Ridge*, 567 F.2d 689, 692 (7th Cir. 1975). Defendants contend that the interest of crime prevention is furthered by the time restrictions on door-to-door solicitation in that darkness facilitates criminal activity and the annoy-

ance interest purportedly because most persons do not wish to be disturbed in their homes during the evening hours. Further, defendants urge the Court to consider as persuasive support for their position the availability of alternate modes of communication, e. g., the mails, and Saturday hours with respect to those defendants who allow Saturday solicitation.

Defendants' arguments, however, are insufficient to support a finding that their present weekday time restrictions are so narrowly tailored to the asserted government interests as to be constitutionally permissible. First, the Court notes that the availability of Saturday hours and alternate modes of communication is not particularly pertinent to plaintiffs' attack upon defendants' time restrictions. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975); *Citizens For A Better Environment v. Village of Schaumburg*, 590 F.2d at 224.

With respect to defendants' interest in crime prevention, it is incumbent upon them to by some means show that actual experience establishes that their time restrictions prevent crime. *Hynes v. Mayor of Oradell*, 425 U.S. at 617, 96 S.Ct. at 1759. This defendants have not done. Presumably, statistics would indicate that some crimes are more frequently perpetuated under the cloak of darkness. However, defendants have not shown, and the Court

of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espousing various causes attests its major importance. Pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. Many of our most widely established religious organizations have used this method of disseminating their doctrines, and laboring groups have used it in recruiting their members. The federal government, in its current war bond selling campaign, encourages groups of citizens to distribute advertisements and circulars from house to house. Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while

the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people.

Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas.

*Id.* 444 U.S. at 145–46, 63 S.Ct. at 864–65 (citation and footnotes omitted).

doubts, that many of those types of crimes most commonly associated with door-to-door solicitation, e. g., consumer fraud, are more commonly committed after sunset.

In any event, defendants time restrictions unduly impinge upon First Amendment rights. To the extent defendants wish to prevent the commission of those categories of crimes more frequently committed at night by persons posing as door-to-door solicitors, defendants can employ an array of legislative weapons which are much less intrusive of plaintiffs' and their residents' First Amendment rights than a blanket ban on solicitation after sunset or some earlier hour. For example, defendants could enact appropriate registration and identification procedures. See Hynes v. Mayor of Oradell, 425 U.S. at 618, 96 S.Ct. at 1759; Martin v. Struthers, 319 U.S. at 147, 63 S.Ct. at 865; but see Mayor of Oradell, 425 U.S. at 610, 96 S.Ct. at 1756 (Brennan, J., concurring). Perhaps the best answer to defendants' concern about crime, however, is simply that in view of the collision between First Amendment rights and a time restriction on solicitation they should look primarily to stringent enforcement of their substantive criminal statutes to assuage that concern. See Village of Schaumburg v. Citizens For A Better Environment, 100 S.Ct. at 837.

Defendants' public annoyance justification for their ordinances' time restrictions demands little discussion. To support the restrictions on this ground is to derogate the First Amendment rights of plaintiffs and those of defendants' residents who would be willing recipients of plaintiffs' message during the evening hours to the nuisance concerns of those of their residents who would not be willing listeners during those hours, when the wishes of both groups can be easily accommodated. Ordinances which make a solicitor liable for trespass

for ignoring a resident's no solicitation directive have long been viewed as immune from constitutional challenge. Martin v. Struthers, 319 U.S. at 148, 63 S.Ct. at 865; Hall v. Commonwealth, 188 Va. 72, 49 S.E.2d 369 (1948), appeal dismissed sub nom., 335 U.S. 875, 69 S.Ct. 240, 93 L.Ed. 418. Thus, a resident wishing to avoid being called upon by door-to-door solicitors may do so simply by posting a "no solicitation" or "no trespassing" sign. Village of Schaumburg v. Citizens For A Better Environment, 100 S.Ct. at 836–37.[5]

The Court's research has unearthed but three cases that appear to have squarely faced the question of the constitutional validity of time restrictions on door-to-door solicitation. Connecticut Citizens Action Group v. Town of Southington, 508 F.Supp. 43 (D.Conn., 1980); Westfall v. Board of Commissioners of Clayton County, 477 F.Supp. 862 (N.D.Ga.1979); McMurdie v. Doutt, 468 F.Supp. 766 (N.D.Ohio 1979); see also Citizens For A Better Environment v. Village of Elm Grove, 462 F.Supp. 820 (E.D. Wis.1978) (granting preliminary injunctive relief to exempt plaintiffs from a solicitation ordinance for two consecutive days from 9:00 a. m. to 9:00 p. m.). Southington found an ordinance restricting door-to-door solicitation from 8:00 a. m. to 6:00 p. m. to be unreasonably burdensome upon the plaintiffs' free speech rights for reasons virtually identical to those voiced by the Court today, while Westfall and McMurdie sustained the validity of similar restrictions. The McMurdie opinion, however, is devoid of any analysis on the time restriction question and Westfall's limited analysis on the question does not, in this Court's opinion, comport with the applicable principles of constitutional free speech. The Westfall court's holding relied in part upon the availability of both Saturday hours for door-to-door solicitation and public places in which

---

**5.** The Court is mindful that its analysis on this question, taken alone, could be directed with equal force toward an attack upon an ordinance restricting solicitation to, for example, sometime after 9:00 p. m. That question is not now before the Court. However, the Court pauses to note that the public annoyance argu-

ment might well assume a quite different cast in the context of a case attacking an ordinance that forbade soliciting after some late evening hour in view of the supportable fact that the overwhelming majority of residents in communities such as defendants' are either asleep or preparing for sleep by those hours.

the plaintiffs therein could deliver their message. As stated, the availability of alternate modes of communication is not pertinent to the constitutional validity of a particular restriction on free speech. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. at 556, 95 S.Ct. at 1245; *Citizens For A Better Environment v. Village of Schaumburg*, 590 F.2d at 224. In addition, this Court finds the *Westfall* court's reasoning unpersuasive in that it relies on the municipal defendant's assertion that darkness facilitates crime without indicating how the municipality carried its burden to show the requisite close nexus between door-to-door solicitation after dark and the incidence of crime or, in the event such a nexus exists, the absence of crime prevention measures which are less restrictive of First Amendment rights. Accordingly, the Court respectfully declines to follow *Westfall* and *McMurdie*.[6]

■ The Court now addresses plaintiffs' challenge to defendants' failure to enact specific time periods by which a request for a permit to conduct door-to-door solicitation must be acted upon by municipal officials. This question also requires little discussion. When a municipality enacts permit requirements as a prior restraint to the exercise of free expression, it must do so without vesting broad discretionary powers in municipal officials. *Hynes v. Mayor of Oradell*, 425 U.S. at 617, 96 S.Ct. at 1759. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969). In view of the above, a statutory deadline for municipal action upon a permit application is essential if the permit requirement is to avoid being found constitutionally infirm. *A Quaker Action Group v. Morton*, 516 F.2d 717, 735 (D.C.Cir. 1975). Indeed, it is easy to envision the range of discretionary abuses, which an ordinance that does not contain a deadline for administrative action could be subject to. Accordingly, the Court finds plaintiffs' challenge to this feature of defendants' ordinances to be well-taken.

6. Lastly in this regard, the Court notes that both the Illinois Municipal League and the State of Wisconsin's Department of Justice have drafted model ordinances regulating door-

 In conclusion, the Court finds that insofar as defendants' ordinances prohibit door-to-door solicitation to certain daytime hours and insofar as they do not establish reasonable deadlines for municipal action with respect to permit applications, defendants' ordinances are void on their face, *see Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977), and as applied to plaintiffs. Accordingly, the Court grants plaintiffs' motion for summary judgment. An appropriate order shall enter.

to-door solicitation that permit solicitation up until 9:00 p. m. on weekdays. *See* Plaintiffs' Reply Brief, Appendix.